UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN McGHEE ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 2:14-cv-167-JMS-DKL |
| ) | |
| RICHARD BROWN, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for a Writ of Habeas Corpus**

Petitioner Brian McGhee was found guilty of felony murder following a jury trial in an Indiana state court. He is currently serving a forty-eight year sentence for this crime. Mr. McGhee now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For the reasons explained in this Entry, Mr. McGhee's petition for a writ of habeas corpus is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

**I.
Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Mr. McGhee does not challenge any of the state court's factual findings. On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural background as follows:

> The facts favorable to the convictions are that on June 19, 2004, Q.E. and R.B. were walking near a wooded area behind an apartment building in the French Quarter Apartments (the Apartments) in Jeffersonville, Indiana. As Q.E. and R.B. approached the edge of the wooded area, they found Pierre Nash lying face down on the ground with a blue washcloth spread out across his back. Q.E. and R .B. informed Pamela Braswell, Q.E.'s father's girlfriend, and Melissa Daniels, R.B.'s

mother, of their discovery. Braswell and Daniels went to the woods, confirmed the boys' story, and immediately returned to Braswell's apartment and called the Jeffersonville Police Department (the JPD).

Several minutes later, the JPD dispatcher informed Officer Isaac Parker that Nash, who was then unidentified, was found in the woods behind the Apartments, and Officer Parker proceeded to the scene. When Officer Parker arrived, the Jeffersonville Fire Department and Emergency Medical Services (EMS) personnel were attending to Nash. Nash had been shot twice, was still alive, but was unconscious.

. . . .

Detective Thompson obtained a subpoena for Nash's phone records. After reviewing the records, Detective Thompson and Sergeant Grimm discovered there were two phone calls to and one from phone number 283–5069 prior to the time Nash left work. That phone number correlated to 1908 Village Green Apartments, apartment 151, which was leased by McGhee. Nash's phone records indicated there were approximately 40 calls made between Nash and McGhee in the five months preceding Nash's death.

. . . .

On June 21, JPD officers located Nash's blue Mercedes in the parking lot of a church near Erica Lorenzo's, McGhee's girlfriend, apartment. Thereafter, the JPD "dispatcher call[ed] [Detective Thompson] and said that the County had received a call that there was a Brian McGhee in [the] ... 1202 Allison Lane area, and he was there [and] he had a duffle bag with guns in it. This was an anonymous call." Id. at 142–43. Following the anonymous call, the JPD obtained a search warrant authorizing a search of McGhee's apartment. On June 22, Officers Todd Wilson and Jason VanGilder, Detectives Oliver and Thompson, and Sergeant Grimm executed the search warrant. When they arrived, they found McGhee and Vanessa Hopes, McGhee's other girlfriend, in McGhee's apartment. While at the apartment, Detective Thompson took McGhee aside and informed him of his *Miranda* rights. JPD personnel did not find a duffel bag or guns at McGhee's apartment.

While other officers continued to search McGhee's apartment, Detective Thompson and McGhee traveled to the Jeffersonville police station. Detective Thompson informed McGhee of his *Miranda* rights a second time and McGhee signed an "Interrogation—Advice of Rights" form[.]

. . . .

On June 28, 2004, the State charged McGhee with murder, felony murder, and robbery. On March 1, 2006, McGhee filed a motion to suppress the taped statement he provided Detective Thompson on June 22, 2004. Following a hearing, the trial

> court denied McGhee's suppression motion on March 6, 2006. A jury trial began on March 7, 2006. . . .
>
> On March 13, the jury found McGhee guilty of felony murder and robbery, but failed to reach a verdict on the murder charge. On April 10, 2006, the trial court sentenced McGhee to fifty-five years for felony murder and thirty years for robbery, with the sentences to run concurrently.

*McGhee v. State*, 859 N.E.2d 1291, 2007 WL 121370, *1-2, 5-6 (Ind. Ct. App. 2007) ("*McGhee I*").

On direct appeal, the Indiana Court of Appeals affirmed in part and reversed in part. *See McGhee I*, 2007 WL 121370, at *1. The Indiana Court of Appeals determined that Mr. McGhee's double-jeopardy rights were violated when he was convicted of both felony murder and robbery, and thus it vacated his conviction and sentence for robbery. *See id.* at *6. His felony murder conviction and sentence were affirmed in all other respects. *See id.* at *6-12. Mr. McGhee filed a petition to transfer with Indiana Supreme Court, which was denied on May 22, 2007. *See McGhee v. State*, 869 N.E.2d 452 (Ind. 2007).

Mr. McGhee filed for post-conviction relief in state court. The post-conviction court denied him relief and, as discussed further below, Mr. McGhee was eventually denied leave to file a belated appeal after missing multiple deadlines. His petition to transfer to the Indiana Supreme Court was denied, and this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 followed.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably

applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Guys v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III.
### Discussion

Mr. McGhee raises five claims in his habeas petition that can be restated as follows: (1) his motion to suppress his recorded statements to the police was improperly denied by the trial court; (2) the trial court improperly admitted evidence regarding uncharged conduct; (3) there was insufficient evidence to convict him of felony murder premised on a robbery because there was no evidence that property was taken with the use or threatened use of force; (4) his initial arrest was unlawful and thus statements made following that arrest should have been suppressed; (5) his trial counsel provided ineffective assistance by failing to move to suppress evidence resulting from his allegedly illegal arrest. The respondent contends that Mr. McGhee's second claim is not cognizable in a federal habeas proceeding and that he procedurally defaulted his fourth and fifth claims. Notably, Mr. McGhee failed to file a reply brief. Thus not only does he not resist these arguments, but the Court is left with only a one-paragraph summary of each of Mr. McGhee's

claims.

The Court will first address the issue of procedural default before addressing the merits of the claims that remain.

### A. Procedural Default

#### 1. Grounds Four and Five Are Procedurally Defaulted

The respondent contends that Mr. McGhee procedurally defaulted his fourth and fifth claims. There are two distinct ways in which a federal habeas petitioner can procedural default a claim. The one relevant to these two claims is the independent and adequate state ground doctrine: "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). This doctrine is premised on the rule that federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state-law ground precluding review by a federal habeas court "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315.

When a petitioner does "not meet state procedural requirements . . . the state court judgment rests on an independent and adequate state ground, and principles of comity and federalism dictate against upending the state-court conviction, and instead, finding that the petitioner's claim is procedurally defaulted." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). "In assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules. Instead, we ask whether the rule invoked was firmly established and regularly followed." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015)

(citations and quotations marks omitted).  In sum, "[i]f a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then [a federal court is] unable to consider that claim on collateral review." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010).

Mr. McGhee's petition for post-conviction relief was denied by the state post-conviction court on August 22, 2011.  Mr. McGhee failed to timely appeal that decision.  The Indiana Court of Appeals, however, granted him leave to file a belated appeal on May 4, 2012.  [Filing No. 18-4 at 2.]  After several granting him several extensions of time as well as another motion for leave to file a belated appeal on November 5, 2012, the Indiana Court of Appeals warned him that no further extensions of time would be given.  Nevertheless, it granted him another extension of time on December 19, 2012.  [Filing No. 18-4 at 3-4.]  Eventually, Mr. McGhee filed a defective brief that was rejected by the Indiana Court of Appeals, and he subsequently filed another petition for permission to file a belated appeal.  [Filing No. 18-4 at 4.]  On April 10, 2013, the Indiana Court of Appeals denied him permission to file a belated appeal and dismissed his appeal with prejudice. [Filing No. 18-4 at 5.]  Mr. McGhee filed a petition to transfer with the Indiana Supreme Court arguing that the Indiana Court of Appeals impermissibly denied him leave to file a belated appeal and dismissed his appeal with prejudice, but his petition to transfer was denied on December 12, 2013.  [Filing No. 18-4 at 6.]

Mr. McGhee was attempting to raise to the Indiana Court of Appeals the fourth and fifth claims he raises here.  [Filing No. 18-10 at 12.]  However, as detailed above, that appeal was dismissed as untimely.  The respondent maintains that dismissal as untimely constitutes an independent an adequate state procedural basis for the decision, and thus these two claims are procedurally defaulted.  Due to Mr. McGhee's lack of reply brief, he does not resist that

conclusion. The record reveals that the Indiana Court of Appeals clearly and expressly invoked untimeliness as the basis for its decision, given that it denied his petition to file a belated appeal after multiple missed deadlines. [Filing No. 18-4 at 5.] This constitutes a procedural ruling "that is independent of the federal question and adequate to support the judgment." *Walker*, 562 U.S. at 315.

Accordingly, Mr. McGhee has procedurally defaulted the fourth and fifth claims raised in his habeas petition.

### 2. *Ground Two is Not Cognizable in a Federal Habeas Proceeding and is Procedurally Defaulted*

Mr. McGhee's second claim is that the "trial court erred in admitting evidence of uncharged conduct." [Filing No. 2 at 7.] Specifically, he maintains that the state trial court should not have allowed a law enforcement officer to testify regarding a shooting prior to the shooting in question that was linked to Mr. McGhee by other evidence. [Filing No. 2 at 7.] This claim was raised by Mr. McGhee in *McGhee I*, and the Indiana Court of Appeals concluded that although the evidence should not have been admitted under Indiana Rule of Evidence 404(b) since it was impermissible propensity evidence, the error was harmless due to the other "considerable evidence of McGhee's guilt." *McGhee I*, 2007 WL 121370, at *10-11.

The respondent contends that this claim is based entirely on state law and therefore, because federal habeas relief is only available for violations of federal law, this claim is not cognizable in this federal habeas proceeding. Again, because Mr. McGhee did not file a reply, he has not asserted that he is attempting to demonstrate the violation of a federal constitutional right nor has he otherwise replied to the respondent's position.

A writ of habeas corpus may only issue if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, "[e]rrors

of state law in and of themselves are not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (citation and quotation marks omitted). "Because a state trial court's evidentiary rulings . . . turn on state law, these are matters that are usually beyond the scope of federal habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). "However, a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial." *Id.* Erroneous evidentiary rulings can only deny an individual the right to a fundamentally fair trial if they "produce[] a significant likelihood that an innocent person has been convicted." *Anderson v. Sterns*, 243 F.3d 1049, 1053 (7th Cir. 2001) (citation and quotation marks omitted).

As an initial matter, Mr. McGhee did not "draw[] enough of a connection between his right to due process and the trial court's . . . evidentiary . . . errors to render his claim cognizable on habeas review." *Perruquet*, 390 F.3d at 512. The Court recognizes that pro se habeas petitions are entitled to a liberal construction. *See Carter v. Duncan*, 819 F.3d 931, 941 (7th Cir. 2016). But Mr. McGhee's petition does not at all raise a due process claim. His petition simply states that "the trial court erred in admitting evidence of uncharged conduct," and then explains the evidence that was improperly admitted. [Filing No. 2 at 7.] Even with the benefit of liberal construction, this is insufficient to raise a due process claim that he was denied a fundamentally fair trial.

In *Perruquet*, the Seventh Circuit held that a pro se petitioner did sufficiently raise such a claim. 390 F.3d at 511-12. It so held because the petitioner did "more than merely cite his constitutional right to a fair trial," he also recited the relevant evidence to his claim and argued that the improper exclusion of the evidence "likely resulted in the conviction of an innocent person"; even though there were gaps in his argument, the Seventh Circuit concluded that the petitioner's "due process argument is readily discernible." *Id.* at 512.

Here, Mr. McGhee did not even cite the constitutional standard, let alone explain why the improperly admitted evidence likely resulted in the conviction of an innocent person. Accordingly, a fair reading of Mr. McGhee's petition is that he raises only an error of state law, and such an error is "not cognizable on habeas review." *Samuel*, 525 F.3d at 574.

Alternatively, even if the Court concluded that Mr. McGhee raised a due process claim in his habeas petition, that claim would be procedurally defaulted because he did not fairly present it to the state courts. *See Perruquet*, 390 F.3d at 518-19 (noting that courts can raise the issue of procedural default *sua sponte*). A second kind of procedural default occurs—other than the type of procedural default based on claims that were decided on an independent and adequate state ground—when a petitioner fails to "fairly presented his claims throughout at least one complete round of state-court review." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citations and quotation marks omitted).

"Fair presentment . . . does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006). The Court considers "four factors when determining whether a petitioner has fairly presented his federal claim to the state courts: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* (citations and quotation marks omitted).

None of these factors is met here. Mr. McGhee framed his challenge before the Indiana Court of Appeals solely as a challenged under Indiana Rule of Evidence 404(b). [*See* Filing No.

18-5 at 28-33.] He did not cite the Due Process Clause or any federal or state cases engaging in a constitutional analysis. Nor did he allege facts that would bring to mind a constitutional challenge; instead, the facts and analysis based on them presented questions of state evidence law. When none of the foregoing factors are met, the petitioner has not fairly presented his claim to the state courts and thus his claim is procedurally defaulted. *See Perruquet*, 390 F.3d at 520-21 (holding that a claim was procedurally defaulted in analogous circumstances).

Accordingly, for either of the foregoing reasons, Mr. McGhee is not entitled to habeas relief on his second claim.

**B.     Merits**

The Court turns to the merits of the two claims that remain and will address each in turn.

*1.     Suppression of Recorded Statements Made to the Police*

Mr. McGhee contends that his constitutional rights were violated when the trial court denied his pre-trial motion to suppress statements he made to police because, prior to those statements, he had requested to speak with his mother so that she could obtain counsel for him.[1] [Filing No. 2 at 5.] The respondent maintains that the Indiana Court of Appeals reasonably concluded that Mr. McGhee's statements were properly admitted.

The Indiana Court of Appeals addressed this claim on the merits. After describing the rights granted by the Fifth Amendment as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Indiana Court of Appeals rejected Mr. McGhee's claim reasoning as follows:

> Based upon the totality of the circumstances, we find that the trial court did not err in admitting McGhee's taped statement. McGhee's appeal is simply a request to reweigh the evidence, which we must decline.

---

[1] Mr. McGhee raised three bases to suppress his recorded statements to the police in state court, *see McGhee*, 2007 WL 121370, at *8-9, but he reasserts only one of those grounds here, [Filing No. 2 at 5].

> . . . .
>
> > Finally, McGhee argues that he "requested permission to contact his mother so she could retain an attorney for him prior to his questioning." Appellant's Brief at 20. Initially, we note that Detective Thompson refuted McGhee's assertion in this regard, and the trial court was within its discretion to credit Detective Thompson's testimony over McGhee's conflicting testimony. We further note that although police must stop questioning a suspect when he invokes his right to counsel until counsel is present or the suspect reinitiates communication and waives his right to counsel, "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Edmonds v. State*, 840 N.E.2d 456, 460 (Ind. Ct. App. 2006) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)), *trans. denied*, *cert. denied*, ––– U.S. ––– (Oct. 30, 2006). "If a suspect makes a request for counsel that is ambiguous or equivocal and, if in light of the circumstances, a reasonable officer would not understand the statement to be a request for an attorney, then the police are not required to stop questioning the suspect." *Edmonds v. State*, 840 N.E.2d at 460. McGhee's, who was then nineteen years old, request to speak to his mother was not a clear and unequivocal request for counsel. Thus, the trial court did not abuse its discretion by admitting McGhee's taped statement into evidence.
>
> *McGhee I*, 2007 WL 121370, at *9.

When an accused person unambiguously invokes his Fifth Amendment right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). But "if a reference is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, *Edwards* does not require that officers stop questioning the suspect." *Davis*, 512 U.S. at 452. Given these standards, "[o]nce a court decides whether a defendant's request for counsel is ambiguous, the analysis is simple." *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013).

The Indiana Court of Appeals began its analysis by noting that the trial court was well within its discretion to credit Detective Thompson's testimony that Mr. McGhee did not request

to speak with his mother so that she could obtain him counsel. If this is true, there is no basis at all to conclude that Mr. McGhee invoked his right to counsel—there was no request for counsel, ambiguous or otherwise.

Mr. McGhee acknowledges Detective Thompson's testimony and attempts to undermine it by asserting that after Detective Thompson acquired Mr. McGhee's taped statement, "the first thing he did [was] contacted McGhee's mother." [Filing No. 2 at 5.] Even if this is true, it is essentially a request for the Court to reweigh contradictory evidence, which the Court cannot do in a federal habeas proceeding. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Accordingly, if Mr. McGhee never made the alleged request, as this Court must accept, he never invoked his right to counsel and the Indiana Court of Appeals thus reasonably and correctly concluded that his taped statements to the police did not have to be suppressed.

Given the foregoing, the Court need not delve into the details of the Indiana Court of Appeals's alternative basis for its holding—that Mr. McGhee's request for to speak with his mother, even if it did occur, was only an ambiguous invocation of his right to counsel—which, in any event, was an objectively reasonable application of the Supreme Court's decision in *Davis*. For these reasons, Mr. McGhee is not entitled to habeas relief on this claim.

### 2.    *Sufficiency of the Evidence for a Felony Murder Conviction*

Mr. McGhee argues that there was insufficient evidence to convict him of felony murder predicated on a robbery because there was no evidence that property was taken from the victim by the use or threat of use of force. [Filing No. 2 at 8.] The Indiana Court of Appeals addressed this claim on the merits, reasoning as follows:

> McGhee contends there was insufficient evidence to support his conviction of felony murder. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the witnesses' credibility. *Earlywine v. State*, 847 N.E.2d 1011 (Ind. Ct. App. 2006). We consider only the evidence most favorable to the verdict and reasonable inferences to be drawn therefrom, and determine whether there is sufficient evidence of probative value to support the conviction. *Id.* To convict McGhee of felony murder premised on robbery, the State was required to prove beyond a reasonable doubt that Nash was killed while McGhee, acting in concert with other members of the group, knowingly or intentionally took property from Nash through use of force or putting Nash in fear. See I.C. § 35–42–1–1(2); I.C. § 35–42–5–1. "A felony murder conviction requires proof of intent to commit the underlying felony but not of intent to kill." *Kelly v. State*, 813 N.E.2d 1179, 1183 (Ind. Ct. App. 2004), *trans. denied*. Further, our Supreme Court, in *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999), has held that the statutory language "kills another human being while committing" does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person. *Exum v. State*, 812 N.E.2d 204 (Ind. Ct. App. 2004), *trans. denied*.
>
> The State presented evidence that McGhee, Ellis, and Kato formulated a plan to lure Nash to the Apartments, strike him with a gun, and take his money. McGhee's taped statement details the plan:
>
>> Thompson: Okay. Now a plan was pretty much formulated between you three, that when [Nash] got there that you three were going to basically get his money from him, right?
>>
>> McGhee: Yes . . . . [W]hat we planned was when I, when I started walking, I fire a shot off in the air and then that'll get [Nash's] attention all the way towards me and then [Ellis] . . . was suppose [sic] to smack him in his head with [the gun], which it just turned out different.
>
> Exhibits at 24. During the course of the events that led to Nash's death, Nash was shot, killed, and at least his cell phone and car were taken. The evidence, therefore, was sufficient to support Nash's conviction for felony murder premised on robbery.

*McGhee I*, 2007 WL 121370, at *11-12.

Mr. McGhee's insufficiency-of-the-evidence claim is governed by the "rigorous" standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt." *Jones*

*v. Butler*, 778 F.3d 575, 581 (7th Cir. 2015); *see Monroe v. Davis*, 712 F.3d 1106, 1118-19 (7th Cir. 2013). Because the Court considers "this claim on collateral review rather than direct appeal, [AEDPA] imposes an additional layer of defense onto this inquiry: [the Court] may grant relief on this claim only if the [state court] applied the *Jackson* standard unreasonably to the facts of [the petitioner's] case." *Jones*, 778 F.3d at 581-82. Therefore, "[f]ederal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

The foregoing analysis by the Indiana Court of Appeals demonstrates that it engaged in reasoned, good-faith decisionmaking when applying the *Jackson* standard to Mr. McGhee's claim. First, it set forth the state analog to the *Jackson* standard and what the State was required to prove to conviction Mr. McGhee of felony murder—specifically, that the victim, Mr. Nash, "was killed while McGhee, acting in concert with other members of the group, knowingly or intentionally took property from Nash through use of force or putting Nash in fear." *McGhee I*, 2007 WL 121370, at *11. It then set forth evidence from the record that in its view was sufficient to establish this—namely, that Mr. McGhee had a plan to use the threat of force to rob Mr. Nash, and that Mr. McGhee participated in the events that led to Mr. Nash's death as well as the taking of his cell phone and car. *Id.* This analysis demonstrates that the Indiana Court of Appeals "engaged in reasoned, good-faith decisionmaking" when applying the *Jackson* standard. *Gomez*, 106 F.3d at 199.

Mr. McGhee argues that the evidence was more consistent with the cell phone and car being taken to cover up a murder, but that is simply one possible inference from the evidence and therefore not one that the jury was required to make; the jury could have instead concluded that

they robbed Mr. Nash of his cell phone and car and in the course of that robbery he was killed. Mr. McGhee also points out that the pathologist found jewelry and cash on Mr. Nash's body, presumably to argue that this undercuts the idea that a robbery occurred. But as noted by the Indiana Court of Appeals, Mr. Nash's cell phone and car were taken during the incident in question. Most importantly, however, Mr. McGhee's arguments do not establish that the Indiana Court of Appeals failed to apply the *Jackson* standard in a reasoned, good-faith manner. As stated above, without establishing this, Mr. McGhee cannot show that he is entitled to habeas relief on this claim. *See id.* Accordingly, Mr. McGhee is not entitled to habeas relief on this claim.

## IV.
## Conclusion

This Court has carefully reviewed the state record in light of Mr. McGhee's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Because Mr. McGhee failed to carry his burden on his claims, he is not entitled to habeas relief, and his petition is therefore **denied**.

Judgment consistent with this Entry shall now issue.

## V.
## Certificate of Appealability

Rule 11(a) of the *Rules Governing § 2254 Cases* requires the district courts to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and "[i]f the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Pursuant to § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing includes demonstrating "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate

to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and quotation marks omitted). Mr. McGhee has failed to make this showing, and therefore a certificate of appealability is **denied**.

The clerk is **directed** to update the docket to reflect that the petitioner's address is that set forth in the below distribution.

**IT IS SO ORDERED.**

Date: <u>August 4, 2016</u>

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Brian McGhee
No. 164603
Correctional Industrial Facility
5124 W. Reformatory Rd.
Pendleton, IN 46064

Electronically Registered Counsel